UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Angelica Santa Maria Gonzalez,
        *on behalf of* D.K.M.,

                                        Plaintiff,

                v.

Nancy A. Berryhill,
        Acting Commissioner of Social Security,

                                        Defendant.

**Report and Recommendation**

16-CV-767V

## I.     INTRODUCTION

Plaintiff D.K.M., a minor who acted through his mother, applied for Title XVI

Supplemental Security Income ("SSI") on the basis of "congenital torticollis, anomaly skull, face and

bones." (Certified Administrative Record, Dkt. No. 9, at 108 (hereafter [108]).) After an initial

denial and a hearing, an Administrative Law Judge ("ALJ") found several severe impairments but

none that met or equaled any medical listings. The Appeals Council affirmed and made the denial of

benefits the final determination of the Social Security Administration (hereafter the

"Commissioner").

Plaintiff eventually brought suit here to challenge the Commissioner's final determination.

The parties have filed cross-motions for judgment on the pleadings under Rule 12(c) of the Federal

Rules of Civil Procedure ("FRCP"). Plaintiff's central argument is that the ALJ failed to develop the

record regarding speech impairments, and that the failure to develop the record infected the ALJ's

analysis and rendered it unsustainable. The Commissioner defends the final determination on the

basis that the principal medical listing at issue—Listing 111.09, which concerns communication

deficits—requires a connection to a neurological disorder, and that no connection exists here.

District Judge Lawrence J. Vilardo has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 6.) The Court has deemed the pending motions submitted on papers under FRCP 78(b). For the reasons below, the Court respectfully recommends granting the Commissioner's motion (Dkt. No. 12) and denying plaintiff's cross-motion (Dkt. No. 11).

## II.   BACKGROUND

### A.   Medical Background

Plaintiff was born on December 7, 2012. On April 1, 2013, plaintiff was evaluated at neurosurgeon Dr. Veetai Li's office for occipital plagiocephaly. [177.] At the time, plaintiff had no developmental concerns. [177.] Plaintiff was diagnosed with occipital flattening and torticollis [178], but this diagnosis was not connected to any formal neurological disorder. The diagnosis also did not mention any speech deficits of neurological origin.

Among other records, the administrative record contains medical records from ECMC Pediatric Educational and Diagnostic Services. On June 13, 2013, plaintiff was evaluated for a multidisciplinary core developmental assessment. [183.] There were no concerns about plaintiff's hearing. [184.] Plaintiff had a developmental delay in gross motor skills of over 33 percent. [184.] There were no concerns about plaintiff's sensory processing. [185.] There were no concerns with plaintiff's cognitive development. "Communication skills are developing appropriately." [186.] Plaintiff was recommended for the Erie County Early Intervention Program for gross motor development. [187.] An Early Intervention quarterly report was prepared on March 31, 2014. [236.] As of that time, plaintiff's gross motor delay had decreased to about 25 percent. [236.] As it was focused on plaintiff's gross motor delay, the report did not specifically address language skills. A quarterly report from March 30, 2015 did, however, address language development. [287.] Plaintiff was 28 months old at this time. According to this report, plaintiff

> regularly imitates many new words without much prompting. He is using the
> following language and morphological structures: negation (no), a variety of nouns
> and verbs, asking simple questions, propositions (in), farewells (bye), greeting (hi),
> and plural –s. [Plaintiff] he uses his expressive language to label items/pictures,
> make simple requests, ask simple questions, and protest. His speech is characterized
> by the following errors: final consonant deletion (aw/off), medial consonant deletion
> (buh-ee/bunny), cluster reduction (bah/block), and syllable deletion (pane/airplane).
> These processes are still considered developmentally appropriate for child of
> [plaintiff's age. [Plaintiff] does need occasional prompting to keep him on task or to
> redirect his attention back to task.

[287.] Speech pathologist Susan Krawczyk signed the report. [288.]

Of the various other medical information in the administrative record, little if any of that

information specifically addresses plaintiff's language development. One of the most recent medical

records available is an evaluation of plaintiff from Neighborhood Health Center that occurred on

August 25, 2015. [306.] Under the section of the evaluation titled "Expressive language delay," a

single line appears that reads, "ST. Followed by ENT, CPSE[1] EVAL TO BEGIN SOON." [310.]

A follow-up visit at the same clinic two months later noted the following:

> Language items passed by parental reporting include: combining words, talking in
> long complex sentences, following series of three simple instructions in order and
> asking why? when? how? questions. Language items passed by clinician observation
> include: speaking clearly at least half the time, pointing to four pictures, naming one
> or more pictures, identifying six body parts, knowing two or more actions, knowing
> two or more adjectives, naming one or more colors, counting one block,
> understanding four prepositions and knowing two opposites. Screening tools used
> include ASQ. Assessment Conclusion: development raises concerns.

[316.]

### B. Procedural Background

Through his mother, plaintiff filed his initial application for SSI benefits on July 19, 2013.

[89.] The initial application was denied on September 9, 2013. [49.] Plaintiff requested a hearing

---

[1] To the Court's best understanding, CPSE refers to the New York State Committee on Preschool Special
Education, which provides evaluations and specially planned individual or group instructional services for
programs for eligible children.

before an ALJ on October 3, 2013.  [59.]

The hearing before the ALJ occurred on June 23, 2015.  Plaintiff's mother was the sole witness and chose at that time to proceed *pro se*.  Plaintiff's mother testified about plaintiff's motor functions and overall development; with respect to language, she testified that he had a limited vocabulary and that "[e]very other word is just like gibberish."  [39.]  Plaintiff's mother noted that her daughter was able to complete sentences when she was the same age.  [41.]  Plaintiff's mother noted that plaintiff was receiving speech therapy at the time.  [42.]

The ALJ issued an unfavorable decision on August 21, 2015.  [11.]  The ALJ decided that plaintiff had three severe impairments: "congenital torticollis; plagiocephaly; and speech/language delay."  [17.]  The ALJ then decided that plaintiff's severe impairments did not meet or medically equal Listings 110.08, 111.06, or 111.09.  Of particular relevance to plaintiff's motion is how the ALJ assessed Listing 111.09 for communication impairments:

> The required level of severity in Listing 111.09 is not met[;] the record does not show a communication impairment associated with documented neurological disorder and either documented speech deficit which significantly affects the clarity and content of the speech; or documented comprehension deficit resulting in ineffective verbal communication for age or impairment of hearing as described under the criteria in 102.10 or 102.11.  The record does not indicate hearing impairment, and in the Erie County Early Intervention Quarterly Report of March 2015, indicated speech therapist findings of a thirty-three percent delay.  However, the record reflects that the claimant is making steady progress and expressive language skills still considered developmentally appropriate for a child of the claimant's age.  (l lF-13)

[18.]  The ALJ used the same quarterly report to decide that plaintiff's mother's testimony was not entirely credible with respect to speech or language delay:

> The claimant's mother appeared at hearing and testified that the claimant was fitted with a molding helmet, is only able to move his head in one direction, walks on one foot up the stairs, speaks a few words and mumbles usually, uses his hands to feed himself, walks without support, looks and throws a ball, plays with other children but does not speak with them, and uses a spoon as a hammer on his food.

* * *

       In terms of the claimant's alleged speech/language delay, the speech therapy quarterly report of March 2015 indicated the claimant is making steady progress toward speech therapy goals.  (1 lF-13).  The claimant regularly imitates many new words without much prompting and his speech is characterized by final consonant deletion, medial consonant deletion, cluster reduction, and syllable deletion, which the speech therapist considered developmentally appropriate for a child of the claimant's age, and currently demonstrates a 33% delay.  (1 lF-13)

[19–20.]

       The Appeals Council affirmed the ALJ's decision on July 28, 2016.  [4.]  Plaintiff commenced litigation here on September 26, 2016, within 60 days of the Commissioner's final determination as required by 42 U.S.C. § 405(g) and 20 C.F.R. § 404.981.

       As noted above, the parties have cross-moved for judgment on the pleadings under Rule 12(c).  Plaintiff seeks to overturn the Commissioner's final determination for two main reasons. Plaintiff believes that the ALJ did not develop enough of a record to undergo a full determination of Listing 111.09.  "This listing, as it stood in 2015, stated that to prove a listing level impairment of communication 'the documentation should include a description of a recent comprehensive evaluation, including all areas of affective and effective communication, performed by a qualified professional.'  *Id.* at § 111.00 D.  There is no such documentation in the record in the case at bar. The speech therapy summary report in evidence does not provide enough evidence to determine if D.K.M. actually met this listing."  (Dkt. No. 11-1 at 11.)  With respect to functional equivalence to Listing 111.09, "the ALJ did not even *refer* to D.K.M.'s mixed receptive-expressive language disorder. (Tr. 18; 20).  In Acquiring and Using Information, the ALJ focused only on cognition issues. (Tr. 18)."  (*Id.* at 13.)  Plaintiff also argues that the treatment record indicates delays in various forms of development, consistent with plaintiff's mother's hearing testimony.  The Commissioner defends the agency's final determination by noting that obtaining consultative examinations are discretionary and

that "the lack of a medical source statement from a treating provider does not render the record incomplete or require remand." (Dkt. No. 12-1 at 11.) The Commissioner defends the analysis of Listing 111.09 as follows:

> Here, the ALJ properly noted that the record contains no evidence of a documented neurological disorder, accompanied by either a qualifying significant speech or comprehension deficit, and Plaintiff points to no such evidence (Tr. 14; PMem. 11–13). Plaintiff's argument that the lack of evidence of a neurological condition required the ALJ to order a consultative examination is without merit (PMem. 12-13). The purpose of a consultative examination is not to diagnose particular impairments, but to assess the functional limitations, if any, which result from any physical and/or mental impairments. *See* 20 C.F.R. 416.917 (if the record lacks "sufficient medical evidence about your impairment for us to determine whether you are disabled"); *see also* 20 C.F.R. 416.919n (the consultative "report must be complete enough to help us determine the nature, severity, and duration of the impairment, and your residual functional capacity (if you are an adult) or your functioning (if you are a child)"). Moreover, the record here contains numerous reports from D.K.M.'s treating sources, and none of these reports identify a qualifying neurological condition. Indeed, numerous treatment reports specifically noted normal growth and development (*see e.g.*, Tr. 192, 196, 261, 266, 270, 291). In short, Plaintiff is attempting to frame the evidence of record as insufficient, when in fact, the evidence is simply unsupportive of her arguments.

(*Id.* at 13.)

## III.  DISCUSSION

### A. *Scope of Review*

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of SSI benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

### B. Legal Standard

A child under the age of 18 is eligible for Social Security disability benefits if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382 (c)(3)(C)(i). In analyzing whether a child is disabled, the Commissioner must follow a three-step process. First, the Commissioner determines whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the Commissioner finds that the child is engaged in substantial gainful activity, the child will not be awarded benefits. *Id.*; *Torres v. Comm'r*, No. 09CV0059, 2010 WL 2674543, at *5 (E.D.N.Y. June 30, 2010).

Second, the Commissioner determines whether the child has a "severe impairment." 20 C.F.R. § 416.924 (b)–(c). A "severe impairment" is defined as an impairment that is more than a "slight abnormality or a combination of slight abnormalities that cause no more than minimal

functional limitations." 20 C .F.R. § 416.924 (c). If the child's impairment or combination of

impairments is determined to be "severe," then the Commissioner must move to the third step. *Id.*

The third step determines whether the impairment meets or is medically equivalent to an

impairment listed in the "Listed Impairments" section of the code. 20 C.F.R. § 416.924 (d); *Pollard v.*

*Halter*, 377 F.3d 183, 189 (2d Cir. 2004). In determining whether a child's impairments are medically

equivalent to a listed impairment the ALJ must examine the record and consider the child's level of

functioning in the following six "domains:" (1) acquiring and using information; (2) attending and

completing tasks; (3) interacting and relating with others; (4) moving about and manipulating

objects; (5) caring for oneself; (6) health and physical well-being. 20 C.F.R. § 416.926 (a)(b)(1).

If the child has "marked" limitations in two of the domains or an "extreme" limitation in one

domain, then his impairments will be "functionally equal" to the listed impairments, and he will be

found disabled. 20 C.F.R. § 416.926 (a)(d); *White ex rel. Johnson v. Barnhart*, 409 F. Supp. 2d 205, 207

(W.D.N.Y. 2006). A child has a "marked limitation" when the impairment interferes "seriously"

with its ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926 (a)(e)(2).

A child has an "extreme" limitation when the impairment interferes "very seriously" with its ability

to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926 (a)(e)(3). When

analyzing whether a domain is "marked" or "extreme," courts consider test scores, physical health,

and a child's day to day functioning. No single piece of information, however, can establish whether

a child has a "marked" or an "extreme" limitation in a domain. 20 C.F.R. § 416.926 (a)(e)(4).

Instead, the court must view the child as a "whole." *Id.*

### C. Adequacy of the Record

Based on the arguments that plaintiff has raised in his motion papers, the Court's central

concern is whether the ALJ committed a legal error by failing to develop a sufficient record with

respect to Listing 111.09.  "[S]ocial security hearings are not (or at least are not meant to be) adversarial in nature.  It is the rule in our circuit that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding."  *Lamay v. Comm'r*, 562 F.3d 503, 508–09 (2d Cir. 2009) (internal quotation and editorial marks and citation omitted).  The Court notes further that plaintiff was *pro se* through the issuance of the ALJ decision.  "The ALJ must adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered and by scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant facts."  *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009) (internal quotation and editorial marks and citations omitted).

Here, the Court agrees with the Commissioner that the available administrative record is adequate in the absence of a neurological disorder.  Listing 111.09 does in fact address communication impairments, but only when they are "associated with [a] documented neurological disorder."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Commentary accompanying Listing 111.09 fleshes out the importance of a diagnosis of a neurological disorder; the Court reprints that commentary here in its entirety:

> K. What are communication impairments associated with neurological disorders, and how do we evaluate them under 111.09?
>
> 1. Communication impairments result from medically determinable neurological disorders that cause dysfunction in the parts of the brain responsible for speech and language.  Under 111.09, we must have recent comprehensive evaluation including all areas of affective and effective communication, performed by a qualified professional, to document a communication impairment associated with a neurological disorder.
>
> 2. Under 111.09A, we need documentation from a qualified professional that your neurological disorder has resulted in a speech deficit that significantly affects your ability to communicate.  Significantly affects means that you

9

demonstrate a serious limitation in communicating, and a person who is unfamiliar with you cannot easily understand or interpret your speech.

3. Under 111.09B, we need documentation from a qualified professional that shows that your neurological disorder has resulted in a comprehension deficit that results in ineffective verbal communication for your age.  For the purposes of 111.09B, comprehension deficit means a deficit in receptive language. Ineffective verbal communication means that you demonstrate serious limitation in your ability to communicate orally on the same level as other children of the same age and level of development.

4. Under 111.09C, we need documentation of a neurological disorder that has resulted in hearing loss.  Your hearing loss will be evaluated under listing 102.10 or 102.11.

5. We evaluate speech deficits due to non-neurological disorders under 2.09.[2]

20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Although plaintiff would have been only a few months old at the time, he did undergo a neurological examination in April 2013 at Dr. Li's office.  [177.]  Dr. Li diagnosed occipital flattening and torticollis but no neurological deficits that would implicate Listing 111.09.  *Cf. Jones v. Colvin*, No. 4:15-CV-00388, 2016 WL 7735259, at *15 (S.D. Tex. Sept. 29, 2016)(Commissioner affirmed where, *inter alia*, "a neurologist[] did not detect neurological deficiencies during his examination"); *Wilkerson ex rel. E.W. v. Astrue*, No. 2:10-CV-87 CEJ, 2012 WL 3860456, at *6 (E.D. Mo. Sept. 5, 2012) ("Although plaintiff was noted to have mild developmental delay in his speech and ability to communicate, the record did not indicate that this was related to his diagnosed neurological disorder, spina bifida."); *Jackson v. Astrue*, No. CIV.A. H-08-2081, 2009 WL 3046317, at *13 (S.D. Tex. Sept. 23, 2009) ("Niehoff reported that, at age two, J.L.P. was progressing, but that his cognitive skill level was nonetheless delayed.  (Tr. at 261)  However, there is no evidence that these delays are associated with an underlying neurological disorder, as required

---

[2] Listing 2.09 describes "[l]oss of speech due to any cause, with inability to produce by any means speech that can be heard, understood, or sustained."  Plaintiff does not appear to have *lost* speech, and in any event, the Court will not consider this listing further since the parties have not raised it as an issue.

by Listing 111.09.  And, more to the point, J.L.P. does not have a documented neurological disorder of the type required by the Listing.").  The record briefly mentions "pica infancy and childhood" [314], but plaintiff has not argued that the condition has risen to the level of a formally diagnosed neurological disorder that is affecting speech.  Without the connection to a neurological disorder, further expert development of the record based on speech alone would not help plaintiff meet or equal Listing 111.09.

Under these circumstances, plaintiff's arguments fall short.  Plaintiff has raised no other legal error or independent factual arguments about the ALJ's analysis.  After reviewing the entirety of the record, the Court finds substantial evidence for the Commissioner's final determination for the reasons explained by the ALJ.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends granting the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) and denying plaintiff's cross-motion (Dkt. No. 11).

## V.   OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below.  "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  FRCP 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Any objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."  *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002)

("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.") (citation omitted).  "We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object.  The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice."  *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record.  Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review.  Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal."  *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted).

SO ORDERED.

___/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: June 5, 2018